AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the

## District of Kansas

**FILED**
U.S. District Court
District of Kansas

9/6/2023

Clerk, U.S. District Court
By___AA___Deputy Clerk

In the Matter of the Search of:
*(Briefly describe the property to be searched or identify the person by name and address)*

premises and devices located in the residential vehicle located at 11711 W 47th Street S. Clearwater, KS 67026 and is further described in Attachment A.

}
}
}
}
}
}

Case No.   23-6238-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

premises and devices located in the residential vehicle located at 11711 W 47th Street S. Clearwater, KS 67026 and is further described in Attachment A.

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251(a)(1) | distribution, receipt, and/or possession of obscene visual representations of the sexual |
| 18 U.S.C. 2252(a)(2) | abuse of children |

The application is based on these facts:

See Attached Affidavit

✓ Continued on the attached sheet.

☐ Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kasev R. Sundar, SA, FBI
*Printed name and title*

Sworn to before me and signed in my presence via Facetime.

Date:   9/6/2023

*Judge's signature*

City and state: Wichita, Kansas

HONORABLE GWYNNE E. BIRZER, U.S. Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: THE PREMISES AND DEVICES LOCATED IN THE RESIDENTIAL VEHICLE LOCATED AT 11711 W 47TH SREET S. CLEARWATER, KS 67026, as further described in Attachment A | Case No. 23-6238-GEB |

**IN THE MATTER OF THE SEARCH OF:
THE PREMISES AND DEVICES
LOCATED IN THE RESIDENTIAL
VEHICLE LOCATED AT 11711 W 47**[TH]
**SREET S. CLEARWATER, KS 67026, as
further described in Attachment A**

Case No.   23-6238-GEB

## <u>AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT</u>

I, Kasev R. Sundar, Special Agent of the Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.     I have been employed as a Special Agent ("SA") of the Federal Bureau of Investigation, since January 8, 2021, and am currently assigned to the Kansas City Resident Agency, Wichita (Kansas) Office. While employed by the FBI, I have investigated federal criminal violations related to child exploitation and child pornography. I have gained experience through training at the Heart of America Regional Computer Forensics Laboratory in Kansas City, MO and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. At the Heart of America Regional Computer Forensics Laboratory, I received training and certifications in using the Cellebrite software to extract and analyze data from electronic media devices. I have also completed training, provided by the FBI and the National Criminal Justice Training Center, on conducting Freenet investigations. Additionally, I have successfully completed the FBI's Computer Analysis Response Technician certification course and the FBI's Digital Extraction authorization course. I am a federal law

enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252 and 2252A, and I am authorized by law to request a search warrant.

2.      As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18 U.S.C. §§ 2252 and 2252A.

3.      I have received training on conducting a wide variety of criminal investigations, to include organized crime, drug trafficking, human trafficking, crimes against children, major theft, and other federal crimes. I have also received training on the preparation and execution of search warrants. I am currently conducting criminal investigations on multiple subjects.

4.      As will be shown below, there is probable cause to believe that the identified residence will contain evidence of the distribution, receipt, and/or possession of obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. § 2252(a)(1) and 18 U.S.C. § 2252(a)(2). I submit this application and affidavit in support of a search warrant authorizing the search of the residence described in Attachment A. I seek authorization to seize and examine evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the aforementioned criminal violations, and as further described in Attachment B.

5.      The information in this affidavit has been communicated to me by other law enforcement investigators and witnesses involved in this investigation, as outlined below. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me or other investigators concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

6.      This affidavit is only intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY AUTHORITY

7.      Title 18, United States Code, Section 2252(a)(1) proscribes:

(a) Any person who—

    (1)      knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer or mails, any visual depiction, if—

        (A)      the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

        (B)      such visual depiction is of such conduct;

8.      Title 18, United States Code, Section 2252(a)(2) proscribes:

(a) Any person who—

    (2)      knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in affecting interstate or foreign commerce through the mails, if—

        (A)      the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

        (B)      such visual depiction is of such conduct;

## DEFINITIONS

9.      The following definitions apply to this Affidavit and Attachment B:

- "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.  See 18 U.S.C. § 2256(8).

- "Minor" means any person under the age of 18 years.  See 18 U.S.C. § 2256(1).

- "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. § 2256(8) (C).  In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.  See 18 U.S.C. § 2256(2) (A).

- "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See 18 U.S.C. § 2256(5).

- "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in

and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

- "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.

**<u>INVESTIGATION/PROBABLE CAUSE</u>**

10.     On April 6, 2022, the Kansas Internet Crimes Against Children Task Force (ICAC) referred an investigation to me regarding four CyberTipline Reports from the National Center for Missing and Exploited Children (NCMEC). The NCMEC CyberTipline Reports revealed that an individual residing in Sedgwick County, KS was using Facebook and Snapchat to distribute images and videos that contained child pornography. ICAC had one CyberTipline Report from Facebook and three CyberTipline Reports from Snapchat. The CyberTipline Report from Facebook was CyberTipline Report 109974458. The three CyberTipline Reports from Snapchat were CyberTipline Reports 108082280, 120897794, and 103400077. Preliminary investigations using database checks revealed that the individual who was sharing the images and videos was likely Jeffrey John Rausch (RAUSCH). RAUSCH is a previously convicted sex offender in Sedgwick County.

11.     Facebook reported NCMEC CyberTipline Report 109974458 on December 7, 2021 at 03:40:46 UTC with a reported incident date and time of December 6, 2021 at 03:38:11 UTC. Facebook reported that a user with Facebook user "John Boss" (User ID: 100003121555346) uploaded multiple files of potential child pornography. Facebook provided the Facebook Messenger messages with the uploaded images of potential child pornography. The messages are as follows between Facebook user John Boss (User ID 100003121555346) and Facebook user Kayleigh Lewis (User ID 100064546484394):

- **(December 6, 2021 at 03:06:23 UTC) John Boss:** Sitting there rubbing your slit through your panties feeling then get wetter as my cock gets harder. Just imagining how hot you'll be when your pussy is swollen and your tits are full of milk and leaking

- **(December 6, 2021 at 03:37:29 UTC) John Boss:** File titled "5x9Q5ph1scN8KyZW263380405_633640851326594_2023990695772522 285_n.jpg" was uploaded. The image file depicts a prepubescent female wearing red and black striped socks that reach to the top of her thighs. She is facing away from the camera on her knees and exposing her vagina.

- **(December 6, 2021 at 03:37:42 UTC) Kayleigh Lewis:** Beautiful

- **(December 6, 2021 at 03:38:10 UTC) John Boss:** File titled "XDQKEAm3xSy3jAfV263160059_429428168833601_6878194177499 733922_n.jpg" was uploaded. The image file depicts a prepubescent female, who appears to be under the age of 12, sitting in a vehicle and wearing only a bathing suit top. Her arms are above her head and her legs are spread exposing her vagina. She appears to be asleep.

- **(December 6, 2021 at 03:38:11 UTC) John Boss:** File titled "IUankoAIPvCneTwY263387037_768617500761990_63223469746482 64 14_o.jpg" was uploaded. The image file depicts two prepubescent females who appear to be under the age of five. One of the females is wearing a pink and red dress with no underwear and her leg is held up exposing her vagina. The other female is wearing blue clothing and she has her finger in the vagina of the female wearing pink and red dress. An adult

male's erect penis is ejaculating into the mouth of the prepubescent female wearing blue clothing.

- **(December 6, 2021 at 03:38:43 UTC) John Boss:** When she needs her diaper changed after she's been wiped clean I can't wait to lick her clean

12.     The email account associated with the Facebook user "John Boss" (User ID: 100003121555346) was beastofburden6978@gmail.com. A search of law enforcement databases found the email address to be associated with Jeffrey John Rausch (RAUSCH) who is a resident of Sedgwick County, KS and a registered sex offender.

13.     On his Sedgwick County Sheriff's Office offender report, RAUSCH reports that he resides at 11711 W. 47th St. S, Clearwater, KS 67026 (TARGET ADDRESS), and his phone number 316-339-5295. RAUSCH had no reported email addresses with the Sedgwick County Sheriff's Office Offender Registration Unit (ORU).

14.     Snapchat reported CyberTipline Report 103400077 on October 10, 2021 at 02:57:21 UTC with a reported incident date and time of September 30, 2021 at 10:37:57 UTC. Snapchat reported username "johnboss6978", with phone number 316-339-5295 (RAUSCH's recorded cell phone number with ORU) and date of birth March 22, 1978 (which is the date of birth for RAUSCH), uploaded two files of potential child pornography.

- **"johnboss6978-None-4042bbe5-d533-572d-9728-bcb2936f18d3~193-c730a54c87.mp4":** A video that depicted an adult male having anal intercourse with a prepubescent child who appears to be under the age of 12. Snapchat reports this file was uploaded on September 30, 2021, at 10:37:57 UTC. Snapchat reports the entire content of this file was publicly available.

- **"johnboss6978-None-4042bbe5-d533-572d-9728-bcb2936f18d3~193-c730a54c87.mp4":** Video of an adult male having anal intercourse with a prepubescent child who appears to be a toddler. Snapchat reports this file was uploaded on September 30, 2021, at 10:37:57 UTC. Snapchat reports the entire content of this file was publicly available.

15.     Snapchat reported CyberTipline Report 108082280 on November 24, 2021 at 02:49:55 UTC with a reported incident date and time of November 23, 2021 at 01:00:50 UTC. Snapchat reported username "john_boss9977", email account johnboss6978@gmail.com with phone number 316-339-5295 (RAUSCH's recorded cell phone number with ORU) and date of birth March 22, 1978 (RAUSCH's date of birth), uploaded one file of potential child pornography.

- **"john_boss9977-None-a4a74212-c700-5d0e-8078-36e34dd85606~224-f7436a41cc.mp4":** Video of an adult male and a prepubescent female who appears to be under the age of eight. The female child is only wearing a shirt. The adult male uses his finger to expose the child's vagina. Snapchat reports this file was uploaded on November 23, 2021, at 01:00:50 UTC. Snapchat reports the entire content of this file was publicly available.

16.     Snapchat reported CyberTipline Report 120897794 to NCMEC on March 24, 2022 at 02:09:27 UTC with a reported incident date and time of March 23, 2022 at 05:31:31 UTC. Snapchat reported username "j_boss6978", email address beastofburden6978@gmail.com with phone number 316-339-5295 (RAUSCH's recorded cell phone number with ORU) and date of birth March 22, 1978 (RAUSCH's date of birth), uploaded one file of potential child pornography. The email address beastofburden6978@gmail.com is the email address used by RAUSCH as stated in Paragraph 12.

- **"j_boss6978-None-0790f45a-5019-5204-959f-9cdf531ddbb7~573-48fd3132e7.mp4":** A video that depicted an adult male having anal intercourse with a prepubescent child who appears to be under the age of 12. This video matches a video reported by Snapchat for user "johnboss6978" under Cyber Tip 103400077 in Paragraph 14. The file was uploaded on March 23, 2022 at 05:31:31 UTC. Snapchat reports the entire content of this file was publicly available.

17.     The date of birth and phone number in all three of the aforementioned CyberTipline Reports, mentioned in Paragraphs 14-16, from Snapchat for users "johnboss6978", "johnboss6978", and "j_boss6978" match the date of birth and phone number for RAUSCH.

18.     CyberTipline Report 121576217 was reported to NCMEC by Dropbox on April 5, 2022 at 05:26:50 UTC. Per NCMEC CyberTipline Report 121576217, Dropbox user "John Boss" uploaded five video files that contained potential child pornography. The incident time listed on the report was April 4, 2022 at 05:26:50 UTC. The email address associated with the "John Boss" Dropbox account was johnboss6978@gmail.com. The email address was verified by Dropbox. The five videos uploaded by Dropbox user "John Boss" included the following:

- **Gina - IMG_2786_x264.mp4** – A naked prepubescent female is laying on a bed. An adult male exposes the child's vagina and rectum. The female then performs oral sex on the adult male. Afterwards, the adult male ejaculates on female child's stomach, chest, and face. NCMEC CyberTipline Report 121576217 categorized the video as depicting a prepubescent minor performing a sex act.

- **VID-20171208-WA006-1.mp4** – A male, possibly an adult, engages in anal sex with a prepubescent male. After the anal intercourse, the prepubescent male exposes his rectum. NCMEC CyberTipline Report 121576217 categorized the video as depicting a prepubescent minor performing a sex act.

- **VID-20170510-WA0089.mp4** – A young female performs oral sex on a young male. NCMEC CyberTipline Report 121576217 categorized the video as depicting a pubescent minor performing a sex act.

- **VID-20170330-WA0020.mp4** – An adolescent male performs oral sex on himself. The male appears to be a pre-teen at the onset of puberty since he is able develop an erection, but his scrotum does not appear fully developed, and no hair is visible on his arms, legs, face, or pubic region. NCMEC CyberTipline Report 121576217 categorized the video as depicting a pubescent minor performing a sex act.

- **7a5934e1-562c-4ad7-8dab-f046a0cc7876.mp4** – An adolescent female engages in vaginal and anal sex with a male who might be an adult. The female appears to a preteen at the onset of puberty since she is wearing clothing that appears to be a training bra and has no visible hair on her pubic region. NCMEC CyberTipline Report 121576217 categorized the video as depicting a pubescent minor performing a sex act.

19.     On March 31, 2022, ICAC served a search warrant for Facebook user "John Boss" (User ID: 100003121555346). The search warrant results provided by Meta Platforms, Inc. revealed that the Facebook account "John Boss" was created on November 18, 2011 and closed by

Meta Platforms, Inc. on January 8, 2022 at 00:22:34 UTC. The registered email address for the account was beastofburden6978@gmail.com. The phone numbers provided by the account holder were 316-339-5295, 316-312-0368, and 316-393-9272. The phone number 316-339-5295 matches the phone number listed in CyberTipline Reports in Paragraphs 14-16 and the phone number for RAUSCH that is on records with Sedgwick County ORU. The account user's date of birth is March 22, 1978, which matches RAUSCH's date of birth.

20.     Meta Platforms, Inc. did not provide any images or videos depicting potential child pornography in its response to the search warrant for Facebook user "John Boss". The search warrant response did confirm the chat conversation between Facebook User "John Boss" (User ID 100003121555346) and Facebook Username "Kayleigh Lewis" (User ID 100064546484394) on December 6, 2021 between 03:06:23 UTC and 03:38:43 UTC where "John Boss" shared three images of potential child pornography with "Kayleigh Lewis" per NCMEC CyberTipline Report 109974458, which is mentioned in Paragraph 11. Additionally, on December 6, 2021 at 03:04:25 UTC, "John Boss" sent "Kayleigh Lewis" a message that read: "Good deal I love your pussy when it's wet like that I still have a pair of your panties here every once in a while I sit and sniff what I'm watching child porn thinking of you."

21.     Also on March 31, 2022, ICAC served a search warrant for Google account beastofburden6978@gmail.com. On April 4, 2022, Google responded to the search warrant for beastofburden6978@gmail.com and provided the following subscriber information:

- Name: John Boss

- Created on: 2011-11-16 00:46:19 Z

- Birthday (Month Day, Year): March 22, 1978

- Contact e-Mail: beastofburden6978@gmail.com

- Recovery e-Mail: johnboss6978@gmail.com

- Recovery SMS: +13163395295 [US]

22.     The Gmail account beastofburden6978@gmail.com was created on November 16, 2011 at 00:46:19 UTC. The last login into the account occurred on March 31, 2022 at 16:50:55 UTC. The recovery email for the account is johnboss6978@gmail.com and the recovery phone number is 316-339-5295 (RAUSCH's recorded cell phone number with ORU). Customer information provided by Google shows that the name of the account user is "Jeffrey Rausch" with a date of birth of March 22, 1978 (RAUSCH's date of birth) and residing at the TARGET ADDRESS. The email address johnboss6978@gmail.com is another known email address used by RAUSCH (that will be mentioned in Paragraph 24).

23.     The emails provided by Google pursuant to the search warrant for the account beastofburden6978@gmail.com revealed a Snapchat account termination notice on March 23, 2022 for the Snapchat account "j_boss6978", which matches the incident date reported in CyberTipline Report 120897794 in Paragraph 15. Other emails showed that the user of beastofburden6978@gmail.com provided his cell phone number to another user. The number provided was 316-339-5295, which matches RAUSCH's cell phone number and the cell phone number provided in three CyberTipline Reports from Snapchat described in Paragraphs 14-16.

24.     ICAC also served a search warrant for Google account johnboss6978@gmail.com, which was the recovery email address in beastofburden6978@gmail.com. The Gmail account johnboss6978@gmail.com was created on March 31, 2018 at 00:17:58 UTC. The last login into the account occurred on April 5, 2022 at 05:29:08 UTC. The recovery email for the account is beastofburden6978@gmail.com, which is RAUSCH's other email account. The recovery phone number for the johnboss6978@gmail.com email address is 316-339-5295 (RAUSCH's recorded

cell phone number with ORU), which matches the recovery phone number for the beastofburden6978@gmail.com email address. Customer information provided by Google, for the email address johnboss6978@gmail.com, shows that the account user is "Jeffrey Rausch" with a date of birth of March 22, 1978 (RAUSCH's date of birth) and residing at the TARGET ADDRESS.

25.     Additionally, ICAC obtained and served search warrants to Snapchat for the three Snapchat accounts mentioned in Paragraphs 14-16 – "johnboss6978", "john_boss9977", and "j_boss6978".

- The results of the search warrant for "johnboss6978" confirmed the information Snapchat had provided to NCMEC in CyberTipline Report 103400077 (this is mentioned in Paragraph 13) – Snapchat user "johnboss6978", with phone number 316-339-5295, uploaded two files of potential child pornography on September 30, 2021. The email address associated with the "johnboss6978" Snapchat account was beastofburden6978@gmail.com. Snapchat had not yet verified the email address when it removed the "johnboss6978" account on October 1, 2021 at 03:42:34 UTC. As mentioned in Paragraph 22, the subscriber of the email account beastofburden6978@gmail.com is RAUSCH with a date of birth of March 22, 1978 and residential address at the TARGET ADDRESS, which matches RAUSCH's date of birth and home address. The recovery phone number for the Gmail account is 316-339-5295 (RAUSCH's recorded cell phone number with ORU). The two videos shared by Snapchat user "johnboss6978" were:

- **chat~media_v4~2021-09-30-10-36-10UTC~johnboss6978~phm~db1967be48e2402fb47baae6fa5afc86~v4.mp4** – Video of an adult male having anal intercourse with a child who appears to be a toddler.

- **chat~media_v4~2021-09-30-10-37-57UTC~johnboss6978~phm~2c53fb0ab2cd4ab1b1bfc3c75dd88ec6~v4.mp4** – Video of an adult male having anal intercourse with a prepubescent child who appears to be under the age of 13.

- The results of the search warrant for "john_boss9977" revealed that the Snapchat account was deleted on November 24, 2021 at 04:05:28 UTC after the user of the account uploaded a video on November 23, 2021 at 07:07:18 UTC. The video depicted a prepubescent female wearing a pink t-shirt and naked below her waist. The female is lying with her back on a mattress and exposing her vagina. The video appears to have been filmed by a male who makes motions with his hand, at the beginning and at the end of the video that are indicative of him masturbating. During the middle of the video, the male uses his fingers to open the female's vagina and then turns the female's body to expose her buttocks.

- The results of the search warrant for "j_boss6978" revealed that the Snapchat account was created on November 25, 2021 at 00:11:38 UTC, and the account was active as of April 6, 2022. The email address associated with the account is beastofburden6978@gmail.com, and the phone number associated with the account is 316-339-5295 – both of which match

RAUSCH's phone number and one of his email addresses. The display name for the Snapchat account is "John Boss". The conversations that Snapchat provided show that between December 23, 2021 and March 23, 2022, Snapchat user "j_boss6978" engaged in several conversations with other Snapchat users. In those conversations, "j_boss6978" shared and received multiple images and videos. Some of the images and videos that "j_boss6978" shared with other Snapchat users depicted an individual who resembled RAUSCH. In many of those images and videos, the individual resembling RAUSCH was taking pictures of himself while exposing his entire upper body, using a device that appears to be a pipe used to smoke either crack or methamphetamine, or engaging in sex acts such as exposing his penis or masturbation. Snapchat user "j_boss6978" had shared several messages with Snapchat user "selizabeth2696" on February 21, 2022, February 26, 2022, and March 23, 2022:

o      On February 21, 2022, the images that "selizabeth2696" shared included photographs of an unknown, nude woman.

o      On February 26, 2022, "j_boss6978" sent "selizabeth2696" two images that depicted a male's penis and a video that depicted a male, resembling RAUSCH, masturbating.

o      On March 23, 2022, "j_boss6978" shared multiple videos with "selizabeth2696" that depicted minor children engaged in sex acts such as exposing genitalia, oral sex, and anal sex. Also on March 23, 2022 at 05:56:26 UTC, "j_boss6978" sent "selizabeth2696" the

message: "I have a video I can't show you because it's too big but basically five or six year old is drugged and half conscious while her dad I'm assuming fuck her in her ass laying there her eyes rolling back in her head."

26.     On April 6, 2022, ICAC provided me with a case report that was completed in September 2009 that involved RAUSCH. Per the report, an ICAC investigation in 2009 had identified RAUSCH knowingly using the peer-to-peer software program LimeWire to search for and download child pornography. As part of the investigation, RAUSCH voluntarily agreed to an interview with an ICAC detective during which he acknowledged that he used LimeWire to download child pornography. As a result of ICAC's investigation, RAUSCH was charged with Sexual exploitation of child; Film/magazine/printed <18 yoa (21–3516 a 2 KS) in the Kansas 18th Judicial District in Sedgwick County on October 15, 2009. RAUSCH was convicted of that charge on May 3, 2011.

27.     A Sedgwick County Sheriff's deputy recently spoke with RAUSCH's mother at the TARGET ADDRESS and was informed that RAUSCH lived on the property with the mother and the mother's husband. RAUSCH primarily resided in a camper on the property.

28.     On July 12, 2023, the FBI Kansas City Division's surveillance team conducted a surveillance operation on the TARGET ADDRESS. During the operation, the surveillance team initially observed RAUSCH repeatedly walking between the home at the TARGET ADDRESS and a shed on the property. The surveillance team then observed RAUSCH walking around the home, walking on the driveway, and then walking behind the home towards his camper. The surveillance team finally observed RAUSCH walking to the greenhouse on the property and then returning to his trailer.

29.     Based on the aforementioned information, I believe there is probable cause that RAUSCH possesses materials that contain evidence of violations of 18 U.S.C. § 2252(a)(1) and 18 U.S.C. § 2252(a)(2) at the TARGET ADDRESS. This is due to the facts that:

- RAUSCH's phone number (that is on record with the Sedgwick County ORU) was registered with all of the Facebook, Snapchat, and Google accounts mentioned in this affidavit.

- RAUSCH's name, date of birth, and home address are present on both Gmail accounts mentioned in this affidavit.

- At least one of the two Google accounts was registered with the Facebook, Snapchat, and Dropbox accounts mentioned in this affidavit where child pornography was shared.

- Snapchat user "j_boss6978" shared several photographs that depicted an individual who resembled RAUSCH.

- Deputies of the Sedgwick County Sheriff's Office have spoken to RAUSCH's mother who has confirmed that he resides at the TARGET ADDRESS.

- Through the observations of the FBI Kansas City Division's surveillance team, RAUSCH has been observed moving throughout the TARGET ADDRESS.

- RAUSCH has been convicted in the past of a child pornography related charge.

## CHARACTERISTICS OF CHILD PORNOGRAPHERS

30.     From my own experience as an FBI Special Agent and from conversations with experienced investigators, including those at the Kansas Internet Crimes Against Children task force, I have learned the following regarding child pornography offenders:

a.      The majority of individuals who collect child pornography are persons who have a sexual attraction to children.  They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature. In this investigation, RAUSCH informed Facebook user "Kayleigh Lewis" (User ID: 100064546484394) on December 6, 2021 at 03:04:25 UTC: "Good deal I love your pussy when it's wet like that I still have a pair of your panties here every once in a while I sit and sniff what I'm watching child porn thinking of you". Additionally, RAUSCH admitted to an ICAC detective, during an interview on September 16, 2009, that he used LimeWire software to search for and keep child pornography. RAUSCH further acknowledged to the ICAC detective that he did not see the need to delete the child pornography files he downloaded because he knew they could be recovered even if he did delete them.

b.      The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.  In this investigation, RAUSCH has shown that he has retained images and videos of child pornography by sharing and receiving them from various social media users.

c.      The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior.  The different Internet-based mediums used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles. Frequently, multiple mediums will be used. In this investigation, RAUSCH has used the social media platforms Facebook, Snapchat, and Dropbox to share and receive several images and videos depicting child pornography with other social media users.

d.      The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding

comfort for their illicit behavior and desires. In this investigation, RAUSCH has demonstrated his desire to maintain access to child pornography by using various social media accounts for sharing and receiving images and videos that depict child pornography.

e.    The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper. In this investigation, RAUSCH has communicated with specific social media users, such as "Kayleigh Lewis" on Facebook and "selizabeth2696" on Snapchat, where he not only shared child pornography files with those users but also discussed his attraction toward child pornography and the content of a file that he was unable to share.

31.    Affiant asserts that, because of the many characteristics which RAUSCH manifests (discussed above), his residence, the SUBJECT PREMISES, likely contains evidence of his persistent interest in child exploitation and child pornography, as well as evidence of contacts with other like-minded offenders.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

32.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the SUBJECT PREMISES, in whatever form they are found. One form in which the records are likely to be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

33.     I submit that if a computer or storage medium is found on the SUBJECT PREMISES, there is probable cause to believe those records referenced above will be stored on that computer or storage medium, for at least the following reasons:

a.     Deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the storage medium that is not currently being used by an active file- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c.     Wholly apart from user-generated files, computer storage media-in particular, computers' internal hard drives--contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory

"swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

34.      As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the SUBJECT PREMISES because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.   Information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, computers typically contain information that logs: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a

computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g. Internet searches indicating criminal planning), or consciousness of guilt (e.g. running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.     A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to

draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.    I know that when an individual uses a computer to obtain or access child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal

conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

35.     Based upon my training and experience and information relayed to me by federal agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations, including but not limited to "cloud" storage. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a.     Searching computer systems is a highly technical process that requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search website all of the technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software, or operating system that is being searched;

b.     Searching computer systems requires the use of precise, scientific procedures that are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted, or password-protected data. Computer hardware and storage devices may contain "booby traps"

that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted;

c.      The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises; and

d.      Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file, which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed

or encrypted to determine whether it is contraband, evidence, fruits, or instrumentalities of a crime.

36.     Additionally, based upon my training, experience, and information relayed to me by agents and others involved in the forensic examination of computers, I know that routers, modems, and network equipment used to connect computers to the Internet often provide valuable evidence of, and are instrumentalities of, a crime. This is equally true of wireless routers, which create localized networks that allow individuals to connect to the Internet wirelessly. Though wireless networks may be secured (in that they require an individual to enter an alphanumeric key or password before gaining access to the network) or unsecured (in that an individual may access the wireless network without a key or password), wireless routers for both secured and unsecured wireless networks may yield significant evidence of, or serve as instrumentalities of, a crime including, for example, serving as the instrument through which the perpetrator of the Internet-based crime connected to the Internet and, potentially, containing logging information regarding the time and date of a perpetrator's network activity as well as identifying information for the specific device(s) the perpetrator used to access the network. Moreover, I know that individuals who have set up either a secured or an unsecured wireless network in their residence are often among the primary users of that wireless network.

37.     Based on the foregoing, and consistent with Rule 4l(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might

expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## BIOMETRIC ACCESS TO DEVICES

38.     This warrant permits law enforcement to compel RAUSCH, if found present at the SUBJECT PREMISES, to unlock any DEVICES requiring biometric access subject to seizure pursuant to this warrant. The grounds for this request are as follows:

   a.     I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

   b.     If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device.

The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c. If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data that is based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

d. If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

e.      In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

f.      As discussed in this Affidavit, your Affiant has reason to believe that one or more digital devices will be found during the search. The passcode or password that would unlock the device(s) subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

g.      I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint

for 8 hours and the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

h.   Due to the foregoing, and because it is probable that RAUSCH is the individual engaged in the aforementioned criminal activity, if law enforcement personnel encounter any device(s) that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, this warrant permits law enforcement personnel to: (1) press or swipe the fingers (including thumbs) of RAUSCH, if found present at the SUBJECT PREMISES, to the fingerprint scanner of the device(s) found at the SUBJECT PREMISES; (2) hold the device(s) found at the SUBJECT PREMISES in front of the face of RAUSCH, if found present at the SUBJECT PREMISES, to activate the facial recognition feature; and/or (3) hold the device(s) found at the SUBJECT PREMISES in front of the of RAUSCH, if found present at the SUBJECT PREMISES, to activate the iris recognition feature, for the purpose of attempting to unlock the device(s) in order to search the contents as authorized by this warrant. The proposed warrant does not authorize law enforcement to compel the individuals found at the SUBJECT PREMISES,

including RAUSCH, to state or otherwise provide the password or any other means that may be used to unlock or access the device(s). Moreover, the proposed warrant does not authorize law enforcement to compel the individuals present at the SUBJECT PREMISES to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the device(s), without first obtaining a waiver of that individual's Miranda rights.

### CONCLUSION

39.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located at the locations described in Attachment A. I respectfully request that this Court issue a search warrant for the locations described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

40.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the SUBJECT PREMISES will contain evidence of violations of 18 U.S.C. § 2252.

41.     Further, I submit that such evidence, listed in Attachment B to this affidavit, constitutes contraband, the fruits of crime, things otherwise criminally possessed, or property, which is or has been used as the means of committing the foregoing offenses.

42.     I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital

evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the premises. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

43.     Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the residence identified in Attachment A for the items listed in Attachment B.


Kasev R. Sundar
Special Agent
Federal Bureau of Investigation


Attested to by the Affiant, in accordance with the requirements of Fed.R.Crim.P. 41(d)(3), by telephone or other reliable electronic means, to wit:  Facetime on September 6, 2023.

.


THE HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

## ATTACHMENT A

*Property to be searched*

The property to be searched is residential vehicle located at 11711 W 47th Street S, Clearwater, KS 67026, further described as follows and circled in red:

The property is located off W 47th Street S and southeast of the intersection W 47th Street S and S 119th Street W. A dirt and gravel driveway from W 47th Street S leads to the property. The residential vehicle is in front of the single-family home to its east. East of the residential vehicle are several trees.













## ATTACHMENT B

*Property to be seized*

1.     Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica, in any format or media, including computer files, prints, negatives, drawings, and paintings.

2.     Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software, computer related documentation, passwords and data security devices, and storage devices), including the software or programs or applications contained therein, that may be or are used to:

      a.     distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

      b.     seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

      c.     communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children; and any and all data or information on the device which may relate to subparagraphs 2a, 2b, and 2c, including data or information that may reveal indicia of ownership, access, or use.

3.      Any and all notes, documents, records, correspondence, in any format and media (including, but not limited to, envelopes, letters, papers, diaries, manifestos, manuals, email messages, chat logs and electronic messages, and handwritten notes) pertaining to child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children, and to include any and all data or records that may reveal indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

4.      Any and all cameras, film, videotapes or other photographic equipment, which may be used to contain, create or duplicate child pornography, visual depictions of minors engaged in sexually explicit conduct, or child erotica.

5.      Any and all documents, records, or correspondence, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

6.      Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider.

7.      Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote

computer storage, and user logins and passwords for such online storage or remote computer storage.

8.      Any and all records, documents, invoices and materials, in any format or media (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

9.      Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.